Michael R. Totaro (102229)
**Totaro & Shanahan**
**P.O. Box 789**
**Pacific Palisades, CA 90272**
**310 573 0276 (v) 310 496 1260 (f)**
**Mtotaro@aol.com**
**Attorneys for the Debtor/Debtor in Possession**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>**IDA MAE WOODS,**<br><br><br>Debtor/Debtor in Possession | Case No.: **2:15-bk-20029-BB**<br><br>Chapter: 11<br><br>**PROPOSED THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**<br><br>**Dated: March 17, 2016**<br><br>**Date:  April 27, 2016**<br>**Time:  2:00 pm**<br>**Ctrm:  1475 255 E. Temple St. LA, CA** |

This Third Amended Chapter 11 Plan of reorganization (the "Plan") under Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") provides for the restructuring of the debts of the above-named Debtor(s) (collectively "Debtor"). If confirmed, the Plan will bind all creditors provided for in the Plan, whether or not they file a proof of claim, accept the Plan, object to Confirmation, or have their claims allowed. All Creditors should refer to Articles I-IV of this Plan for the precise treatment of their claims. A disclosure statement (the "Disclosure Statement") that provides additional information is being served with this Plan. The Disclosure Statement is explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should**

**read these papers carefully and discuss them with your attorney, if you have one.**

**PLAN PERIOD:** The Plan Period set forth in this Second Amended Disclosure Statement shall not be construed as including full payment of the secured portion of the first mortgage on the real property as described in Article I (B) Classes 1 through 4 below. The Plan Period shall be 60 months excluding payment on any secured debt that extends beyond the 60-month period.

## Article I

### Unclassified Claims including administrative priority claims, priority tax claims, and gap claims

Administrative United States Trustee fees will be paid as they come due. Administrative Legal fees of $3,000 will be paid on the Effective Date. There are no other claims in this section.

## Article II

### Secured and General Unsecured Claims and Other Claims

**A.    Secured Creditors:**

The following classes include claims secured by a lien on real property in which Debtor has an interest.

**Class 1:** Secured claim of: Pennymac Holdings, LLC

Description of collateral: 8 Oak Court, Natchez, MS

| | |
|---|---|
| Priority of lien: | First and Retained |
| Principal Amount owed: | $22,896.01 |
| Amount of arrearages: | $ 3,132.71 |
| Total Claim: | $28,943.42 |
| Value of Collateral | $35,000.00 |
| Proposed Interest Rate: | 4.5% |

Proposed Regular monthly payment:    $221.42

Total Payments over 15-year loan:    $39,855.60

Term of Payments:    March 1, 2016 through February 1, 2031

This claim is impaired. Debtor and Pennymac Holdings, LLC ("Pennymac") have entered into a Stipulation Re: Treatment of its Claim.

Pennymac (its successors or assigns) shall have a fully secured claim in the amount of $28,943.42 to be amortized over 15 years at a fixed interest rate of 4.5% per annum (the "**Secured Claim**"). Any payments Debtor has made on the Secured Claim pursuant to the Adequate Protection Order between the parties [*Docket Number ___*] are to be credited towards the Secured Claim.

Debtor shall tender regular monthly principal and interest payments to Pennymac (and/or its servicer) in the amount of $221.42 on the first day of each month for the Secured Claim commencing March 1, 2016 and continuing on the first day of each month thereafter until February 1, 2031 when all outstanding amounts owed on the Secured Claim, including any escrow payments and/or charges as may be required pursuant to the Note and Deed of Trust ("Loan") are to be paid in full.

Effective immediately, Debtor is required to pay any and all property taxes for the Subject Property when due and obtain and maintain real property insurance for the Subject Property that is also in accordance with any requirements set forth in the Deed of Trust. Debtor agrees to provide Pennymac (and/or its servicer) proof of said insurance within 5 business days, and upon reasonable request to verify compliance with this requirement. In the event Debtor fails to timely pay any property taxes or maintain insurance as required hereunder, then Pennymac (and/or its servicer) may, in accordance with the Loan documents and applicable non-bankruptcy law, and its sole discretion: 1) pay the property taxes and/or obtain insurance for the Subject Property and thereafter require Debtor to tender monthly escrow payments to reimburse Pennymac (and/or its servicer) for any and all real property taxes and/or insurance advances made by Pennymac (and/or its servicer) for the Subject Property; and/or 2) treat any such failure to pay the property taxes when due and/or maintain insurance for

the Subject Property as a default hereunder.    In the event Pennymac (and/or its servicer) requires Debtor to tender escrow payments for property taxes and/or insurance as required hereunder, Debtor shall tender such escrow payments on the first day of each month thereafter along with the regular monthly payment required above until February 1, 2031 at which time the Secured Claim and any outstanding escrow advances are to be paid in full.

Post-Confirmation Default.  Upon confirmation of Debtor's Chapter 11 Plan, the Automatic Stay shall be deemed terminated as to the Debtor and estate, and Pennymac (and/or its servicer) may provide Debtor notice of any default hereunder in accordance with the Loan, and applicable state law and/or proceed with its remedies under the terms of the Loan and applicable state law, including but not limited to foreclosure of the Subject Property, without further notice, order, or proceeding of this Court.

Any forbearance by Pennymac (and/or its servicer) in exercising any right or remedy, including, without limitation, Pennymac (and/or its servicer) accepting payments from third persons, entities or successors in interest to Debtor, or in amounts less than the amount due, including as provided for hereunder, shall not be a waiver of or preclude Pennymac's (and/or servicer) exercise of any right or remedy, or act as a waiver of Pennymac's right to proceed hereunder or under the Loan.

Except as expressly provided herein, the Debtor waives any and all claims, causes of action, whether known or unknown, she currently has against Pennymac, and its respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan, successors and assigns in relation to the Loan referenced herein and any and all agreements which exist between them regarding or relating to the Loan prior to the date of this treatment. This waiver includes Debtor's right to object to Pennymac's Claim. The Debtor also releases Pennymac and its respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan, successors and assigns from any liability in relation to the Loan prior to the date of this treatment.

In the event the Debtor seeks to sell the Subject Property at anytime prior to confirming her Chapter 11 Plan, or if she seeks to sell the Subject Property through her Chapter 11 Plan, Pennymac shall be entitled to credit bid at any such sale in an amount not less than the full unmodified, original outstanding balance owing under the terms of the Loan and/or exercise any of its rights pursuant to 11 U.S.C. §§ 363(b), (f) and (k) as applicable, and shall be permitted to receive proceeds from the sale of the Subject Property in an amount not less than the full unmodified, original outstanding balance owing under the terms of the Loan at said time.

In the event the Debtor asserts that Pennymac has failed to properly update its internal system to comply with the terms of this treatment within a reasonable period of time after an order is entered confirming the Debtor's Chapter 11 Plan of Reorganization, which shall be not less than ninety (90) days, the Debtor shall be required to provide written notice of the alleged lack of compliance to Pennymac and its counsel of record indicting the nature of the alleged lack of compliance. If Pennymac fails to either remedy the alleged lack of compliance and/or provide an explanation refuting the Debtor's allegation after the passage of ninety (90) days from the date Pennymac receives said written notice (the "Meet and Confer Period"), Debtor may proceed with filing the appropriate motion in bankruptcy court seeking Pennymac's compliance. However, provided Pennymac has in good faith sought to remedy Debtor's grievance during the Meet and Confer Period, Debtor shall not request an award of her attorneys' fees and costs nor sanctions as a result of filing said motion.

In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Pennymac shall retain its lien in the full, unmodified amount due under the Loan since the commencement of these proceedings, less any payments received to such date

Except as otherwise expressly provided for herein, all remaining terms of the Loan, which are incorporated herein by this reference, shall govern the treatment of Pennymac's Secured Claim

**Class 2:** Secured claim of:  Pennymac Holdings, LLC

Description of collateral: 5708 Woodruff Ave. Lakewood, CA

Priority of lien:                 First and Retained

Total Claim:                     $839,775.56

Stipulated Value of Collateral              $522,867.11

Proposed Interest Rate:                        4.5%

Proposed Regular monthly payment:        $   2,649.29

Total Payments over 30-year loan:          $953,744.40

Escrow Payment of:                               528.62

Total Payment:                              $   3,177.91

Term of Payments:       January 1, 2016 through December 1, 2045

This claim is impaired. Debtor and Pennymac Holdings, LLC ("Pennymac") have entered into a Stipulation Re: Treatment of its Claim.

Pennymac (its successors or assigns) shall have a Secured Claim in the amount of $522.867.11, to be amortized over 30 years at a fixed interest rate of 4.5% per annum ("Secured Claim").  Any payments Debtor has made on the Secured Claim pursuant to the Adequate Protection Order between the parties [*Docket Number 80*] are to be credited towards the Secured Claim.

Pennymac shall have an unsecured claim in the amount of $322,700.66 ("Unsecured Claim"), which includes Pennymac's post-petition attorneys' fees and costs associated with Debtor's case, and Pennymac shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata share of the dividend issue to general unsecured creditors under the Debtor's Plan under Class 5.

Debtor shall tender regular monthly principal and interest payments to Pennymac (and/or its servicer) in the amount of $2,649.29 on the first day of each month for the Secured Claim commencing January 1, 2016 and continuing on the first day of each month thereafter until December 1, 2045 when all outstanding amounts owed on the

Secured Claim, including any escrow payments and/or charges as required hereunder and/or the Note and Deed of Trust and any related loan modification agreements ("Loan"), are to be paid in full.

In addition to the principal and interest payment, Debtor shall tender to Pennymac (and/or its servicer) all necessary escrow payments for any and all real property taxes and/or real property insurance advances made by Pennymac (and/or its servicer). Debtor shall tender the necessary escrow payments together with the regular payment described herein, commencing on January 1, 2016 and continuing on the first day of each month thereafter until December 1, 2045 at which time the Secured Claim, which shall include any related escrow advances, must be paid in full. The current amount of the escrow payment is $528.62; however, Debtor understands the amount of this escrow payment is subject to change per any escrow requirements of Pennymac (and/or its servicer) as a matter of course.

<u>Post-Confirmation Default</u>: Upon confirmation of Debtor's Chapter 11 Plan, the Automatic Stay shall be deemed terminated as to the Debtor and estate, and Pennymac (and/or its servicer) may provide Debtor notice of any default related to the treatment herein in accordance with the Loan, and applicable state law and/or proceed with its remedies under the terms of the Loan and applicable state law, including but not limited to foreclosure of the Subject Property, without further notice, order, or proceeding of the Court.

Any forbearance by Pennymac (and/or its servicer) in exercising any right or remedy, including, without limitation, Pennymac (and/or its servicer) accepting payments from third persons, entities or successors in interest to Debtor, or in amounts less than the amount due, including as provided for hereunder, shall not be a waiver of or preclude Pennymac's (and/or servicer) exercise of any right or remedy, or act as a waiver of Pennymac's right to proceed hereunder or under the Loan.

Except as expressly provided herein, the Debtor waives any and all claims, causes of action, whether known or unknown, she currently has against Pennymac, and its respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current

and subsequent holders of the Loan, successors and assigns in relation to the Loan referenced herein and any and all agreements which exist between them regarding or relating to the Loan prior to this treatment. This waiver includes Debtor's right to object to Pennymac's Claim. The Debtor also releases Pennymac and its respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan, successors and assigns from any liability in relation to the Loan prior to the date of this treatment.

In the event the Debtor seeks to sell the Subject Property at any time Pennymac shall be entitled to credit bid at any such sale in an amount not less than the full unmodified, original outstanding balance owing under the terms of the Loan and/or exercise any of its rights pursuant to 11 U.S.C. §§ 363(b), (f) and (k) as applicable, and shall be permitted to receive proceeds from the sale of the Subject Property in an amount not less than the full unmodified, original outstanding balance owing under the terms of the Loan.

In the event the Debtor seeks to sell or refinance the Subject Property at any time after her Plan is confirmed, but prior to substantially consummating her Chapter 11 Plan and receiving her Chapter 11 discharge, Pennymac (and/or its servicer) shall not be required to remove its lien encumbering the Subject Property unless it receives proceeds from the sale or refinance of the Subject Property in an amount not less than the full, unmodified, original outstanding balance owing under the terms of the Loan, less any payments received to such date.  If the proposed sale or refinance of the Subject Property is for less than the full, unmodified, outstanding balance owing under the Loan, then Pennymac's consent must be obtained in writing prior to any such sale or refinance. In the event the Debtor seeks to sell or refinance the Subject Property after substantial consummation of her Chapter 11 Plan and receiving her Chapter 11 discharge, the foregoing requirements of this no longer apply; however, in no event shall Pennymac (and/or its servicer) be required to remove its lien encumbering the Subject Property unless it receives proceeds from the sale or refinance of the Subject

Property in an amount not less than the Secured Claim, which includes any escrow amounts due, less any payments received to such date at said time.

In the event the Debtor asserts that Pennymac has failed to properly update its internal system to comply with the terms of this treatment within a reasonable period of time after an order is entered confirming the Debtor's Chapter 11 Plan of Reorganization, which shall be not less than ninety (90) days, the Debtor shall be required to provide written notice of the alleged lack of compliance to Pennymac and its counsel of record indicting the nature of the alleged lack of compliance. If Pennymac fails to either remedy the alleged lack of compliance and/or provide an explanation refuting the Debtor's allegation after the passage of ninety (90) days from the date Pennymac receives said written notice (the "Meet and Confer Period"), Debtor may proceed with filing the appropriate motion in bankruptcy court seeking Pennymac's compliance. However, provided Pennymac has in good faith sought to remedy Debtor's grievance during the Meet and Confer Period, Debtor shall not request an award of her attorneys' fees and costs nor sanctions as a result of filing said motion.

In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Pennymac shall retain its lien in the full, unmodified amount due under the Loan since the commencement of these proceedings, less any payments received to such date

Except as otherwise expressly provided for herein, all remaining terms of the Loan, which are incorporated herein by this reference, shall govern the treatment of Pennymac's Secured Claim.


**Class 3:** Secured claim of:  Pennymac Holdings, LLC

Description of collateral: 647 W. 60th ST. Los Angeles, CA

Priority of lien:             First and Retained

Total Claim:                 $408,664.87

Stipulated Value of Collateral             $260,000.00

Proposed Interest Rate:                            4.5%

Proposed Regular monthly payment:        $1,449.81,
  plus escrow.

Total Payments over 30-year loan:        $521,931.60

Term of Payments:      January 1, 2016 through December 1, 2045

This claim is impaired. Debtor and Pennymac Holdings, LLC ("Pennymac") have entered into a Stipulation Re: Treatment of its Claim.

Pennymac (its successors or assigns) shall have a Secured Claim in the amount of $286,135.71, to be amortized over 30 years at a fixed interest rate of 4.5% per annum ("Secured Claim").  Any payments Debtor has made on the Secured Claim pursuant to the Adequate Protection Order between the parties [*Docket Number 89*] are to be credited towards the Secured Claim.

Pennymac shall also have an unsecured claim in the amount of $151,546.87 ("Unsecured Claim"), which includes Pennymac's post-petition attorneys' fees and costs associated with Debtor's case, and Pennymac shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata shares of the dividend issue to general unsecured creditors under the Debtor's Plan under Class 5.

Debtor shall tender regular monthly principal and interest payments to Pennymac (and/or its servicer) in the amount of $1,449.81 on the first day of each month for the Secured Claim commencing January 1, 2016 and continuing on the first day of each month thereafter until December 1, 2045 when all outstanding amounts owed on the Secured Claim, including any escrow payments and/or charges as required hereunder and/or the Note and Deed of Trust and any related loan modification agreement ("Loan"), are to be paid in full.

In addition to the principal and interest payment, Debtor shall tender to Pennymac (and/or its servicer) all necessary escrow payments for any and all real property taxes and/or real property insurance advances made by Pennymac (and/or its servicer).  Debtor shall tender the necessary escrow payments together with the regular payment described above, commencing on January 1, 2016 and continuing on the first

day of each month thereafter until December 1, 2045 at which time the Secured Claim, which shall include any related escrow advances, must be paid in full.  The current amount of the escrow payment is $339.31; however, Debtor understands the amount of this escrow payment is subject to change per any escrow adjustments required by Pennymac (and/or its servicer) as a matter of course.

Post-Confirmation Default:  Upon confirmation of Debtor's Chapter 11 Plan, the Automatic Stay shall be deemed terminated as to the Debtor and estate, and Pennymac (and/or its servicer) may provide Debtor notice of any default related to the treatment herein in accordance with the Loan, and applicable state law and/or proceed with its remedies under the terms of the Loan and applicable state law, including but not limited to foreclosure of the Subject Property, without further notice, order, or proceeding of the Court.

Any forbearance by Pennymac (and/or its servicer) in exercising any right or remedy, including, without limitation, Pennymac (and/or its servicer) accepting payments from third persons, entities or successors in interest to Debtor, or in amounts less than the amount due, including as provided for hereunder, shall not be a waiver of or preclude Pennymac's (and/or servicer) exercise of any right or remedy, or act as a waiver of Pennymac's right to proceed hereunder or under the Loan.

Except as expressly provided herein, the Debtor waives any and all claims, causes of action, whether known or unknown, she currently has against Pennymac, and its respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan, successors and assigns in relation to the Loan referenced herein and any and all agreements which exist between them regarding or relating to the Loan prior to this treatment. This waiver includes Debtor's right to object to Pennymac's Claim. The Debtor also releases Pennymac and its respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan, successors and assigns from any liability in relation to the Loan prior to the date of this treatment.

In the event the Debtor seeks to sell the Subject Property Pennymac shall be entitled to credit bid at any such sale in an amount not less than the full unmodified, original outstanding balance owing under the terms of the Loan and/or exercise any of its rights pursuant to 11 U.S.C. §§ 363(b), (f) and (k) as applicable, and shall be permitted to receive proceeds from the sale of the Subject Property in an amount not less than the full unmodified, original outstanding balance owing under the terms of the Loan.

In the event the Debtor seeks to sell or refinance the Subject Property at any time after her Plan is confirmed, but prior to substantially consummating her Chapter 11 Plan and receiving her Chapter 11 discharge, Pennymac (and/or its servicer) shall not be required to remove its lien encumbering the Subject Property unless it receives proceeds from the sale or refinance of the Subject Property in an amount not less than the full, unmodified, original outstanding balance owing under the terms of the Loan, less any payments received to such date.  If the proposed sale or refinance of the Subject Property is for less than the full, unmodified, outstanding balance owing under the Loan, then Pennymac's consent must be obtained in writing prior to any such sale or refinance. In the event the Debtor seeks to sell or refinance the Subject Property after substantial consummation of her Chapter 11 Plan and receiving her Chapter 11 discharge, the foregoing requirements of this no longer apply; however, in no event shall Pennymac (and/or its servicer) be required to remove its lien encumbering the Subject Property unless it receives proceeds from the sale or refinance of the Subject Property in an amount not less than the Secured Claim, which includes any escrow amounts due, less any payments received to such date at said time.

In the event the Debtor asserts that Pennymac has failed to properly update its internal system to comply with the terms of this treatment within a reasonable period of time after an order is entered confirming the Debtor's Chapter 11 Plan of Reorganization, which shall be not less than ninety (90) days, the Debtor shall be required to provide written notice of the alleged lack of compliance to Pennymac and its counsel of record indicting the nature of the alleged lack of compliance. If Pennymac

fails to either remedy the alleged lack of compliance and/or provide an explanation refuting the Debtor's allegation after the passage of ninety (90) days from the date Pennymac receives said written notice (the "**Meet and Confer Period**"), Debtor may proceed with filing the appropriate motion in bankruptcy court seeking Pennymac's compliance. However, provided Pennymac has in good faith sought to remedy Debtor's grievance during the Meet and Confer Period, Debtor shall not request an award of her attorneys' fees and costs nor sanctions as a result of filing said motion.

In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Pennymac shall retain its lien in the full, unmodified amount due under the Loan since the commencement of these proceedings, less any payments received to such date

Except as otherwise expressly provided for herein, all remaining terms of the Loan, which are incorporated herein by this reference, shall govern the treatment of Pennymac's Secured Claim.

**Class 4:** Secured claim of: Wells Fargo Bank, NA

Description of collateral: 650 W. 60th St. Los Angeles, CA

Priority of lien:                    First and Retained

Total Allowed Claim:                          $324,591.19

 Value of Collateral:                                 100%

Proposed Interest Rate:                           5.25%

Proposed Regular monthly payment:      $   1,713.92

Escrow Payment:                                   132.93

Total Monthly Payment:                      $   1,846.85

Maturity Date:  5/1/2049

This claim is impaired and settled by stipulation. The pertinent portions of the stipulation are as follows:

1.      Total Allowed Claim Amount: $324,591.19 as of 2/1/2016, which includes $249,691.05 in unpaid principal balance

2.      Interest rate:  5.25% fixed

3.      Maturity date: 5-1-2049

4.      Escrow: Debtor will continue to pay on a monthly basis, in addition to principal and interest, escrow payments for taxes and insurance. The current escrow payment is $132.93, but is subject to change.

5.      Monthly Payment beginning 3/1/16:  $1,846.85 (includes $1713.92 principal and interest and $132.93 escrow)

6.      Post-petition Escrow Advances: Debtor will reimburse Wells Fargo $635.55 for property taxes (disbursed 11/23/2015) and $324.00 for insurance (disbursed 1/20/2016) for a total of $959.55 by paying $479.77 on or before April 15, 2016 and $479.78 on or before May 15, 2016.

7.      **Default Defined**. If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default. The Debtor is in default under the Plan if the Debtor fails within 21 days of the service of such notice of default, plus 3 additional days if served by mail, either: (i) to cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

8.      If the Debtor is in default the affected creditor may

   a. Take any actions permitted under non-bankruptcy law so enforce the terms of the Plan; or

   b. Move to dismiss this case or to convert this case to a Chapter 7 bankruptcy case.

9.      Except as modified above, the remaining terms of the original note and Deed of Trust will remain viable and in full force and effect.

10.    In the event the debtors case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, or in the event Lender obtains a Relief from Stay order based on Debtor's default hereunder, Lender shall retain its lien in the full amount due under the Note, all terms on Lender's claim shall revert to the original terms of the Note and Deed of Trust and the automatic stay shall be terminated without further notice, order, or proceeding of the court.

**As to all classes, monthly payments will be due on the first day of the month.**

**B.    Unsecured Creditors:**

**Class 5: General Unsecured Creditors:**

Debtor will pay to the General Unsecured Creditors a sum of $398.06 per month to be divided pro-rata, without interest, for a term of 60 months which is approximately 5% of the total allowed general unsecured debt the total of which is approximately $477,673.91. Debtor reserves the right to prepay the entire 60 months of payments, without penalty, at any time during the 60-month Plan Period.

**C.    Equity Holders:**

**Class 6: Equity Interest Holders:**

Debtor is the only Interest Holder and will retain her interest in all assets of the estate. Debtor's interest is unimpaired.

**D.    Executory Contracts and Leases:**

**(1) Executory Contracts and Leases to be Assumed:**

On the Effective Date, the Debtor will assume the following executory leases:

1.    Helen Wyatt 647 W. 60th St. LA, CA

2.    Glenwood Hubbard / Reggie Boyd 650 W. 60th St. LA, CA

3.    Linda Jones boswell 5708 Woodruff Ave. Lakewood, CA

4.    Gregory Evans 8 Oak Court, Matchez, Mississippi

**(2) Executory Contracts and Leases Rejected**.

Any contract or lease not listed in section E (1) above is rejected.

**Article III**

**Allowance and Disallowance of Claims**

A.    **Disputed Claim**. A disputed claim is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.[1]

B.    **Delayed Distribution on Disputed Claims**. No distribution will be made on account of that portion of a claim that is disputed unless that claim is allowed by final non-appealable order. Pending resolution of a disputed claim, Debtor will set aside a pro-rata distribution of the face amount of the claim.

C.    **Settlement of Disputed Claims**. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with FRBP 9019 unless the amount allowed by the compromise does not exceed $1,000.00, in which case no court approval is necessary.

**Article IV**

**Means of Implementation**

The Debtor intends to make the payments required under the Plan from available cash on hand, cash accumulated to the Effective Date, family contribution, rents from the properties and social security payments received.

**Article V**

**Discharge and Other Effects of Confirmation**

A.    **Discharge:** Upon completion of the unsecured payments under the Plan, the Debtor may receive a discharge of pre-confirmation debts, except such discharge shall not

---

[1] As of the date of the filing of this Amended Plan there are no disputed claims.

discharge the Debtor from any debts that are found non-dischargeable under §523 or are obligations created by this Plan. To accomplish this, Debtor may file a Certification of Completion of Plan Payments and Request for Discharge **or a Motion for Discharge, Final Decree and closure under 11 U.S.C. §1141(5)**. The payments promised in the Plan constitute new contractual obligations that replace the pre-confirmation debts proposed to be discharged. Creditors may not sue to collect on these obligations so long as the Debtor is not in material default under the Plan. If the Debtor defaults in performing the Plan, affected creditors may sue the Debtor to enforce the terms of the Plan or to dismiss this case or to convert it to a case under chapter 7 of the Bankruptcy Code. See Article VI of the Plan.

For the purpose of discharge, the length of this plan shall be five years (60 months from the effective date). The plan shall not be construed to include payments of the first mortgage which extend over the five-year period to maturity.

**B.    Vesting of Property**. On the Effective Date, all property of the estate will vest in the reorganized debtor pursuant to § 1141(b), free and clear of all claims and interests except as provided in the Plan.

**C.    Plan Creates New Obligations**. Except as otherwise stated in the Plan, the payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

**D.    Creditor Action Restrained**. Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the plan, so long as the Debtor is not in default under the Plan. If the Debtor is in material default under the Plan, affected creditors may: (i) take any actions permitted under non-bankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case or to convert this case to a Chapter 7 bankruptcy case.

**E.    Default Defined**. If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and

Debtor's attorney (if any) a written notice of default. The Debtor is in default under the Plan if the Debtor fails within 21 days of the service of such notice of default, plus 3 additional days if served by mail, either: (i) to cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

**F.**    **Retention of Jurisdiction**. This Court will retain jurisdiction until all Plan payments have been made. After the Final Decree and Discharge this Court will retain jurisdiction of any post-confirmation violation of the order confirming the plan.

**Article VI**

**General Provisions**

**A.**    **Definitions and Rules of Construction**. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in the Plan.

**B.**    **Effective Date of Plan**. The Effective Date of the Plan is the first of the month following the hearing at which the plan is confirmed unless a stay of the confirmation order is in effect, in which case the Effective Date will be the first business day after the date on which the stay of the confirmation order has been lifted, provided that the confirmation order has not been vacated.

**C.**    **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**D.**    **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

**E.    Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the FRBP), the laws of the State of California govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in this Plan.

**F.    Final Decree**. Pursuant to FRBP 3022, a Final Decree may not be entered until a bankruptcy case is fully administered. The court may, however, allow a Final Decree at an earlier date if requested in Miscellaneous Provisions (below) or for cause shown.

**G.    Severability**. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**H.    Miscellaneous**. The Debtor may file a request that the Court enter a Final Decree and Close the Case upon proof by Debtor of substantial consummation as defined in §§ 1101(2) and 350. If requested, upon motion, the Court also has discretion under § 1141(d)(5)(b) to enter a Discharge, exclusive of payments required under the terms of the Plan.   Further, the plan period shall be construed as the 60 months following the effective date of the plan even if payments on a secured mortgage extend beyond that date. In no event shall the plan period be construed to encompass mortgage payments that come due later than 60 months after the effective date.

Respectfully submitted,

By: _Ida Mae Woods_
Ida Mae Woods

By: /s/ Michael R. Totaro
Michael R. Totaro
Attorney for the Debtor

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  P.O. Box 789, Pacific Palisades, CA 90272

A true and correct copy of the foregoing document entitled (*specify*): Proposed Ch 11 Plan will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 17, 2016 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:

On March 17, 2016 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Sheri Bluebond, 255 E Temple St. Los Angeles, CA 90012
Ida Mae Woods, 655 W. 60th St. Los Angeles, CA 90012
Securities and Exchange Commission, Attn. Bankruptcy Counsel, 5670 Wilshire Blvd. 11th Fl., Los Angeles, CA 90036

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 18, 2016 | Michael R. Totaro | /s/ Michael R. Totaro |
|---|---|---|
| Date | Printed Name | Signature |

ECF Service List:

- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Michael R Totaro**    tsecfpacer@aol.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov